A90A0475. WILLIAMS v. THE STATE.
(393 SE2d 506)

SOGNIER, Judge.

Ricky Lane Williams was tried by a jury and convicted of arson in the first degree and he appeals.

1. Appellant contends the trial court erred by refusing to give his requested charge taken directly from OCGA § 24-9-85 (b), which provides that "[i]f a witness shall willfully and knowingly swear falsely, his testimony shall be disregarded entirely, unless corroborated by circumstances or other unimpeached evidence." Before this Code section may be charged, " 'it must appear, among other things, that the witness admits, on the trial, that he wilfully and knowingly swore falsely, or the testimony must be such as to render the purpose to falsify manifest.' [Cits.]" *Mauldin v. State,* 167 Ga. App. 789, 791 (5) (307 SE2d 689) (1983). We have carefully examined the transcript, and conclude that this requirement was not met. Appellant points to instances of conflicting testimony and minor discrepancies in the testimony of various witnesses. However, assuming, without deciding, that witnesses contradicted each other as to material matters, the credit to be given these witnesses by the jury is governed by subsection (a) of OCGA § 24-9-85, and not by subsection (b) as argued by appellant. If, indeed, any inconsistency or discrepancy existed in any witness' testimony, it was obviously attributable to the fallibility of memory. "The rule [compelling a charge on OCGA § 24-9-85 (b)] does not extend to situations where it is shown to be reasonably possible that the discrepancy was occasioned by mistake or the failure of memory." (Citation and punctuation omitted.) *Abrams v. State,* 157 Ga. App. 609-610 (1) (278 SE2d 37) (1981). There is no merit in this

enumeration.

2. Appellant was tried with two co-defendants: Myra Jean Porter, the owner of the burned house, and William Mark Mize. During the State's case in chief, it called as a witness Dennis Porter, the husband of Myra Jean Porter. After acknowledging he was Myra Jean's husband, Porter was asked if he had been informed that he had the right not to testify, and he agreed that the prosecutor had said he "had the right not to testify against [Myra Jean], yes," and that he understood that right, but had nevertheless agreed to testify as to certain matters. However, after being informed by the trial court that if he testified at all he would be testifying against his wife, Porter invoked his privilege and refused to testify. Appellant then moved for a mistrial based on the fact that Porter had been called to the stand and in the presence of the jury had refused to testify against his wife. See *Westbrook v. State*, 162 Ga. App. 130 (290 SE2d 333) (1982).

Although this court has found reversible error where the spouse of the accused had invoked the privilege not to testify in the presence of the jury, see *Colson v. State*, 138 Ga. App. 366, 369-371 (13-17) (226 SE2d 154) (1976), several distinguishing factors are present here. It was evident that the prosecutor was surprised by Porter's invocation of his privilege not to testify. The jury was not present when Porter actually invoked the privilege, having been sent out at the request of the prosecutor in the middle of the colloquy between counsel and the court. After the trial court denied appellant's motion for a mistrial the judge instructed the jury that "Mr. Porter has declined to testify, which he has the perfect right to do. Now, you will draw no inferences one way or the other from his failure to testify. I don't know what he was going to testify to, and neither do you. So you will draw no inferences one way or the other concerning his failure to testify." These factors mitigated the prejudicial effect of Porter's invoking his privilege.

Moreover, in deciding whether the denial of the motion for mistrial was harmful error requiring reversal, we must look at the other evidence presented by the State, as "[t]he fact that there is other sufficient evidence to convict does not make the error harmless; rather, the test is whether the [testimony] may have influenced the jury's verdict." [Cit.] *Moore v. State*, 254 Ga. 674, 677 (333 SE2d 605) (1985). Tim Summers, a fire investigator, testified that he examined the house after the fire and found "pour patterns" from flammable liquids tattooed into the floor by the fire, and that he concluded there was more than one point of origin for the fire. The latter was confirmed by Thomas Beck, Assistant Fire Chief of the City of Commerce, who testified that the rear bedroom and the laundry room appeared to be separate points of origin of the fire.

Terry Howard and Robert McGinley testified that on the night of

the fire, they were in front of the Porter house on their way to visit a neighbor when they met a man carrying a paper bag who pointed a gun at them. They continued on to the neighbor's home, and turned and saw the man, later identified as appellant, enter the Porter home. When they had completed their visit, about 30 or 40 minutes later, Howard and McGinley saw appellant running down the street toward a small green Ford automobile which picked him up. About 5 or 10 minutes later, Howard and McGinley noticed fire trucks going in the direction of the neighborhood they had just visited and followed them back to the scene of the fire. They both testified they saw Porter, Mize, and others arrive at the scene in Porter's car, a green Ford which they identified as the same car they had seen pick up appellant.

Douglas McGinnis testified that he had pled guilty to the charge of conspiracy to commit arson stemming from the fire at the Porter house. He implicated Porter, Mize, and appellant as having conspired to burn down the house, and testified that appellant was brought in from Alabama to help Mize. Pam Patrick, Myra Jean Porter's sister, testified she was present when Porter, Mize, and McGinnis discussed their plan to burn the house, and appellant was brought in because Mize felt he could not do it alone. She and others, including Mize, drove to Boaz, Alabama to get appellant and bring him back to Georgia to assist Mize. She testified that Mize had told her he and appellant had put flammable liquid in bottles and put rags in them and had thrown them through windows in the laundry room and the back bedroom.

In view of this evidence and the mitigating factors discussed earlier, and pretermitting the question of whether, under these circumstances, appellant has standing to raise the prejudice stemming from Dennis Porter's invocation of his privilege not to testify, being a stranger to the marital relationship, we find no cause for reversal here because the overwhelming nature of the evidence against appellant, together with these mitigating factors, render it unlikely that the jury's verdict was influenced by Porter's invocation of his privilege. See *Hester v. State*, 187 Ga. App. 873, 874-875 (2) (371 SE2d 684) (1988).

*Judgment affirmed. Carley, C. J., and McMurray, P. J., concur.*

DECIDED APRIL 16, 1990.

*Jerry C. Gray*, for appellant.
*Timothy G. Madison, District Attorney*, for appellee.